**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2200
_____

MARIANA MACARI; MOKHTAR BEN
AMARA; SABRI BEN AMARA,

                                                  Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A087-469-117, A087-469-118, A087-469-119)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 16, 2013
Before:  RENDELL, CHAGARES and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 12, 2013)
_____

OPINION
_____

PER CURIAM

Mariana Macari, Mokhtar Ben Amara and Sabri Ben Amara petition for review of

the Board of Immigration Appeals' ("BIA") final order of removal.  We will deny the

petition.

I.

1

Macari is the lead petitioner, and the claims of Mokhtar and Sabri Amara (her husband and son, respectively) are derivative of hers. Macari is an ethnic Russian citizen of Moldova who concedes that she is removable for overstaying her visa. Before coming to the United States, she relocated to Italy, met her husband there, and lived there for several years. Her claims arise from an assault she suffered in 2008 when she returned to Moldova to visit her mother, to which she testified before the Immigration Judge ("IJ").

Macari testified that, while walking home through a park one evening in Moldova, she encountered a group of seven men, two of whom she recognized as neighbors of hers in Italy. Over the course of half an hour, the men tripped her, kicked her, twisted a broken beer bottle into her back, mocked her, urinated on her and stole her purse. (A.R. 177-81.) They also told her to leave Moldova because she is ethnically Russian. (A.R. 184.) After Macari came to the United States, her mother told her that the same men had come looking for her twice because they could not locate her in Italy. (A.R. 187.) When asked why the men were looking for her, she testified that "[i]t's all about money" because "[a]t the time of assault me they announced . . . your husband owe us money, a ransom. They racketeers in Italy. They extort money." (A.R. 188.)

On the basis of these circumstances, Macari applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"), arguing that she faces persecution in Moldova on account of her Russian ethnicity and likely would be tortured. The IJ found Macari credible but denied relief for several reasons, including that she had not shown that her ethnicity was "one central reason" for the assault and harm she fears, that she failed to corroborate her claims with objective evidence describing any

2

persecution of ethnic Russians in Moldova, and that the assault did not rise to the level of persecution. The BIA agreed on the first two points and dismissed her appeal on that basis. It did not reach the issue of past persecution. Petitioners petition for review.[1]

## II.

Macari raises two challenges to the BIA's ruling. Neither has merit. First, she challenges the BIA's conclusion that she did not prove that her Russian ethnicity was "one central reason" for her assault as required by 8 U.S.C. § 1158(b)(1)(B)(i).[2] That conclusion rested on the IJ's finding that, according to Macari's own testimony, the assault was motivated by money and her Russian ethnicity at most "played only an incidental, tangential, or superficial role in [the alleged] persecution." Ndayshimiye, 557 F.3d at 130. Macari argues that "the record more aptly supports" her assertion that she was attacked because of her Russian ethnicity. (Pet'rs' Br. at 17.) We review the IJ's finding on this point only for substantial evidence, however, see Ndayshimiye, 557 F.3d at 131, and the record does not compel a contrary conclusion.

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review the agency's factual findings for substantial evidence and may not disturb them unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" Garcia v. Att'y Gen., 665 F.3d 496, 502 (3d Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(B)). In doing so, we review the BIA's decision and may look also to that of the IJ "only to the extent affirmed or incorporated by the [BIA]." Id. (quotation marks omitted). For this reason, although Macari challenges the IJ's finding that her assault did not rise to the level of persecution, we do not reach the issue because it formed no basis for the BIA's ruling. See id. Macari raises no challenge to the agency's denial of withholding of removal or relief under CAT, so we do not reach those issues either.

[2] Macari relies on decisions requiring an alien to prove only that the persecutor was "motivated, at least in part" by a protected ground. E.g., Lie v. Ashcroft, 396 F.3d 530, 535 (3d Cir. 2005). That standard was superseded in 2005 by the enactment of the more demanding "one central reason" standard as part of the REAL ID Act, which applies to Macari's post-REAL ID Act application. See Li v. Att'y Gen., 633 F.3d 136, 142 n.4 (3d Cir. 2011); Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009).

Macari testified that her attackers knew she no longer lived in Moldova, later looked for her in Italy and, when they could not find her, went to her mother's house in Moldova searching for her because "[i]t's all about money" that they were trying to extort, from her ethnically Tunisian husband, in Italy. The attackers' reference to Macari's ethnicity during the assault does not compel the conclusion that her ethnicity was anything more than incidental. See Ndayshimiye, 557 F.3d at 132-33 (addressing similar claims). Nor does Macari's perception that the extortionists do not target ethic Moldovans. Macari argues that the record does not support the IJ's finding that the assault was motivated by money because there is no evidence that the attackers "made any financial gain" and, if they really wanted to do so, would have held her for ransom instead of leaving her behind. (Pet'rs' Br. at 16.) Macari herself testified that the attackers stole her purse, however, and the mere possibility that they might have held her for ransom as well does not compel the conclusion that a central reason for the assault was her ethnicity.

Second, and somewhat relatedly, Macari argues that she submitted sufficient objective evidence of strife between ethnic Russians and Moldovans to corroborate her claim in this regard. She relies on reports of political disputes between ethnic Russians and Moldovans contained in various articles and country reports, but she does not cite any evidence reporting any persecution of Russians because of their ethnicity. She acknowledges that her evidence in this regard is not "direct," but she argues that "it can be . . . inferred" from this evidence of political tension that it has an ethnic dimension as well. (Pet'r's Br. at 24.) Once again, however, our standard of review does not permit us

4

to disturb the agency's ruling unless the evidence was so strong as to <u>compel</u> a contrary conclusion. Macari cites nothing of record approaching that level.

For these reasons, we will deny the petition for review.